EDWARD KAISER, APPELLANT, AND
NOLL TEMPORARY SERVICES, APPELLEE, V.
MILLARD LUMBER, INC., A NEBRASKA CORPORATION, APPELLEE.
587 N.W. 2d 875

Filed January 15, 1999.    No. S-97-857.

944

Henry C. Rosenthal, Jr., of The Law Offices of Ronald J. Palagi, P.C., on briefs, for appellant.

Jerry W. Katskee and Todd W. Weidemann, of Katskee, Henatsch & Suing, for appellee Millard Lumber.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

CONNOLLY, J.

Appellant, Edward Kaiser, brought a negligence action against appellee Millard Lumber, Inc., for injuries he received on Millard Lumber's premises. The district court granted summary judgment for Millard Lumber, determining that Kaiser could not assert a negligence action against Millard Lumber because Millard Lumber was an employer of Kaiser. We affirm.

## BACKGROUND

Kaiser applied for work through appellee Noll Temporary Services (Noll) in November 1991. Noll provided businesses temporary labor for light-industry work. Noll subsequently

hired Kaiser and first assigned him in May 1992 to Able Professional Movers. He worked approximately 3 weeks and then asked Noll's placement coordinator to reassign him, complaining that he did not enjoy the job and that the work hours he received were too inconsistent. Noll next assigned him to perform general labor tasks at Millard Lumber. Millard Lumber hired temporaries from several labor agencies in Omaha, Nebraska.

Noll provided a number of temporary workers for Millard Lumber through a longstanding arrangement. However, Noll and Millard Lumber had no written contract. The negotiated agreement provided that Millard Lumber could call Noll and request laborers, stating what type of work needed to be done, and that Noll would provide them at $6.40 per hour. The loaned employees, like Kaiser, received pay of $4.25 per hour. Noll paid workers' compensation insurance, made payroll deductions, and paid advertising expenses. In Kaiser's case, Millard Lumber called Noll's placement coordinator, JoAngela King, requesting people for "general labor," which King describes as customer service and lumber stacking. Kaiser was told he would stack lumber and help make deliveries. Kaiser had the option to reject the assignment, but he accepted it.

When Kaiser reported to work, a Millard Lumber foreman directed him to stack lumber. He continued to stack lumber on his first and second days on the job, and he also assisted with deliveries. On Kaiser's third day at Millard Lumber, the foreman assigned him to work with a particular Millard Lumber employee, Walter Root, in the company's north "saw house." Root was operating a power saw and told Kaiser to take 4-by-4 posts that had been sawed and place them in a cart.

On his fourth day, Kaiser reported to the same location at Millard Lumber as on the 3 previous days, and the Millard Lumber foreman again assigned him to help Root in the north saw house. Root told Kaiser to stand on one end of a saw, catch the cut boards as they came off the saw, and stack them. At some point, the space underneath the saw blade filled with sawdust due to a plugged vacuum system, causing the saw to spit out sawdust from the top. Root shut down the saw, removed a vacuum hose, and used a small stick to move the sawdust under-

neath the saw blade so that the vacuum system could pick it up. When Root turned on the saw, Kaiser had his hand underneath the saw blade, and the blade partially amputated three fingers and the thumb of Kaiser's right hand. Kaiser admits he was not asked to help clear out the sawdust.

Root stated he told Kaiser, on the days Kaiser worked with him, to keep all body parts and clothing away from the saw blade. Kaiser denies this. Kaiser received no other safety training from either Noll or Millard Lumber. The record reflects Millard Lumber conducted monthly safety meetings for its employees, with each foreman holding a separate meeting. Kaiser did not attend any of these meetings. However, the record does not indicate whether such a meeting was held when Kaiser worked at Millard Lumber. Millard Lumber's operations director, Ricard C. Baker, testified that the company has videos concerning the operation of saws and testified that it does not show them to loaned temporary employees. However, Baker also testified in a second deposition when asked a similar question that loaned employees may have seen the videos if they attended a monthly safety meeting.

Kaiser received a workers' compensation settlement from Noll. Millard Lumber was not a party to the settlement. Kaiser then filed the instant negligence action against Millard Lumber. In its answer, Millard Lumber asserted, inter alia, that Kaiser failed to state a cause of action and had exhausted his exclusive remedy of workers' compensation benefits. Millard Lumber subsequently moved for summary judgment.

In granting Millard Lumber's motion for summary judgment, the district court relied upon our recent opinion *Daniels v. Pamida, Inc.*, 251 Neb. 921, 561 N.W.2d 568 (1997). Applying the *Daniels* three-prong analysis to determine if a loaned servant is an "employee" of the borrowing company, the court determined that "[b]y [voluntarily] accepting the assigned temporary work with Millard and attempting to perform it, there is no question that Kaiser entered into at least an implied contract of hire with Millard." The court additionally determined that the facts undisputedly indicated that the work Kaiser did was essentially that of the special employer and that Millard Lumber undisputedly had the right to control the details of the work per-

formed by Kaiser. Thus, the court found that Kaiser was an employee of Millard Lumber within the meaning of the Nebraska Workers' Compensation Act, precluding Kaiser from suing Millard Lumber in tort for a work-related injury, and therefore granted Millard Lumber summary judgment.

## ASSIGNMENTS OF ERROR

Kaiser assigns, summarized, the district court erred in its grant of summary judgment by concluding that no genuine issue of material fact existed regarding whether (1) Kaiser entered into an employment relationship with Millard Lumber, (2) Millard Lumber exercised control over Kaiser once Noll assigned Kaiser to work for Millard Lumber, (3) Millard Lumber considered Kaiser its employee, and (4) an agreement existed between Kaiser, Noll, and Millard Lumber as to the type of work Kaiser would be performing at Millard Lumber.

## SCOPE OF REVIEW

Summary judgment is proper when the pleadings, depositions, admissions, stipulations, and affidavits in the record disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *Stiver v. Allsup, Inc., ante* p. 687, 587 N.W.2d 77 (1998); *Battle Creek State Bank v. Preusker*, 253 Neb. 502, 571 N.W.2d 294 (1997).

In reviewing a summary judgment, an appellate court views the evidence in a light most favorable to the party against whom the judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence. *Stiver v. Allsup, Inc., supra*; *Barnett v. Peters*, 254 Neb. 74, 574 N.W.2d 487 (1998).

## ANALYSIS

Kaiser asserts that the facts presented, and reasonable inferences therefrom, create genuine issues of material fact regarding whether he and Millard Lumber entered into an employer-employee relationship for purposes of the Nebraska Workers' Compensation Act. Millard Lumber argues that the district court's application of *Daniels v. Pamida, Inc., supra*, was

proper because the relevant facts of this case are materially indistinguishable from those in *Daniels*. Accordingly, the ultimate issue is, Was an issue of material fact raised as to whether Kaiser became an employee of Millard Lumber?

In *Daniels*, as in this case, a labor broker employed the plaintiff, Daniels, and it then assigned Daniels to work for the defendant client, Pamida, Inc. Daniels was injured on Pamida's premises when a Pamida employee allegedly operated machinery negligently. Daniels settled a workers' compensation claim against the labor broker, in which Pamida was not a party. Daniels then filed a negligence action against Pamida. Pamida answered by asserting that it was an employer of Daniels and thus that Daniels' exclusive remedy was found within workers' compensation. The trial court granted summary judgment to Pamida on that assertion.

On appeal to this court, we first noted in our analysis that the Nebraska Workers' Compensation Act is an employee's exclusive remedy against an employer for an injury arising out of and in the course of employment. *Daniels v. Pamida, Inc.*, 251 Neb. 921, 561 N.W.2d 568 (1997); *Tompkins v. Raines*, 247 Neb. 764, 530 N.W.2d 244 (1995). We also stated that when a general employer, like a labor broker, "loans an employee to another for the performance of some special service, then that employee . . . may become the employee of the party to whom his services have been loaned." *Daniels v. Pamida, Inc.*, 251 Neb. at 927, 561 N.W.2d at 571-72. If such is the case, then the employee is simultaneously the employee of both the labor broker and the party to whom his services were loaned, and thus workers' compensation would be the sole remedy for the employee as to either employer. We then restated the relevant test for determining whether one is an employer within the meaning of the Nebraska Workers' Compensation Act as follows:

> "When a general employer lends an employee to a special employer, the special employer becomes liable for workmen's compensation only if:
>
> "(a) the employee has made a contract of hire, express or implied, with the special employer;
>
> "(b) the work being done is essentially that of the special employer; and

"(c) the special employer has the right to control the details of the work.

"When all three of the above conditions are satisfied in relation to both employers, both employers are liable for workmen's compensation."

*Id.* at 928, 561 N.W.2d at 572. See Neb. Rev. Stat. §§ 48-114 (Reissue 1993) and 48-115(2) (Reissue 1988). We then concluded, based upon the evidence presented, that Pamida was an employer vis-a-vis Daniels as a matter of law, and thus Daniels' exclusive remedy was workers' compensation benefits.

Kaiser does not dispute the district court's use of the *Daniels* test to determine whether Millard Lumber was entitled to summary judgment. Rather, Kaiser argues that additional facts in this case, not discussed in *Daniels*, factually distinguish this case from *Daniels* and raise genuine issues of material fact as to two of the three elements of the *Daniels* test.

The party moving for summary judgment has the burden to show that no genuine issue of material fact exists and must produce sufficient evidence to demonstrate that the moving party is entitled to judgment as a matter of law. *Stiver v. Allsup, Inc., ante* p. 687, 587 N.W.2d 77 (1998); *Battle Creek State Bank v. Preusker*, 253 Neb. 502, 571 N.W.2d 294 (1997). A prima facie case for summary judgment is shown by producing enough evidence to demonstrate that the movant is entitled to a judgment in its favor if the evidence were uncontroverted at trial. *Stiver v. Allsup, Inc., supra*; *Kramer v. Kramer*, 252 Neb. 526, 567 N.W.2d 100 (1997). If Millard Lumber has shown a prima facie case for summary judgment, the burden of producing evidence to show a genuine issue of material fact shifts to Kaiser, the party opposing the motion for summary judgment. See *Kramer v. Kramer, supra*. Accordingly, our analysis will focus upon, first, whether Millard Lumber has presented facts proving a prima facie case for summary judgment in its favor, and, second, whether Kaiser has presented contradictory evidence which raises a genuine issue of material fact.

### EXPRESS OR IMPLIED CONTRACT OF HIRE

Kaiser's first and third assignments of error contest the district court's finding that Kaiser entered into at least an implied

contract of hire with Millard Lumber. Both the *Daniels* test and relevant statute require such a finding to provide Millard Lumber immunity from Kaiser's negligence lawsuit. Section 48-114 states that "every person, firm, or corporation, including any public service corporation, who is engaged in any trade, occupation, business, or profession . . . and who has any person in service under any contract of hire, express or implied, oral or written" constitutes an employer subject to the Nebraska Workers' Compensation Act. Section 48-114 determines whether Millard Lumber is an "employer," but not whether it is Kaiser's "employer." Section 48-115 determines whether Kaiser is an "employee" under the act, stating: "The terms employee and worker . . . shall be construed to mean: . . . . (2) Every person in the service of an employer who is engaged in any trade, occupation, business, or profession . . . under any contract of hire, expressed or implied, oral or written . . . ."

The determination that Kaiser is an "employee" pursuant to § 48-115 is necessary to engage the exclusivity language of Neb. Rev. Stat. § 48-109 (Reissue 1993), which states: "If *both* employer and employee become subject to the Nebraska Workers' Compensation Act, both shall be bound by the schedule of compensation provided in such act . . . ." (Emphasis supplied.)

Whether a contract of hire is established is ordinarily a question of fact. *Parson v. Procter & Gamble Mfg. Co.*, 514 N.W.2d 891 (Iowa 1994); *Polk County v. Steinbach*, 374 N.W.2d 250 (Iowa 1985). Compare *Williams v. Williams Janitorial Service*, 207 Neb. 344, 299 N.W.2d 160 (1980) (stating that determination of whether party is employee is question of fact). A court may find a contract of hire established as a matter of law, as in *Daniels v. Pamida, Inc.*, 251 Neb. 921, 561 N.W.2d 568 (1997), only when but one inference can reasonably be drawn from the facts. In *Daniels*, this court stated the following facts as determinative in finding that an implied contract of hire was established as a matter of law:

> The evidence demonstrates that A-Help paid Daniels' wages and provided all payroll services such as withholding taxes and Social Security contributions. A-Help directed Daniels to report to the customer of its choice.

However, Daniels had the right to refuse to report to any assignment as well as the right to terminate any assignment given. Daniels voluntarily went to work for Pamida and performed the tasks assigned to him. There is no question that Daniels had made at least an implied contract of hire with Pamida, and, therefore, part (a) of the three-factor test has been satisfied.

251 Neb. at 928, 561 N.W.2d at 572.

Kaiser, however, asserts that he has raised additional facts not raised in *Daniels* which indicate that there was no implied contract of hire between him and Millard Lumber. Those facts are as follows: (1) Kaiser was treated differently than Millard Lumber's regular employees in that he did not receive the same safety training, (2) he was treated differently in that he had to pay for his own hardhat, (3) Noll intended to remain Kaiser's sole employer, and (4) Noll set up his pay schedule and was the provider of all his benefits. He asserts this evidence raises a genuine issue of material fact regarding whether he and Millard Lumber created an implied contract of hire.

"The term implied or inferred contract, also sometimes called an implied in fact contract, refers to that class of obligations which arises from mutual agreement and intent to promise, when the agreement and promise have simply not been expressed in words." 1 Samuel Williston, A Treatise on the Law of Contracts § 1:5 at 20 (Richard A. Lord 4th ed. 1990). This court has stated: "An implied contract arises where the intention of the parties is not expressed but where the circumstances are such as to show a mutual intent to contract." *Acton v. Schoenauer*, 121 Neb. 62, 63, 236 N.W. 140, 141 (1931). See *Bloomfield v. Nebraska State Bank*, 237 Neb. 89, 465 N.W.2d 144 (1991) (stating that evidence of mutual intent is necessary to prove existence of implied contract). The determination of the parties' intent to make a contract is normally a question of fact. 75A Am. Jur. 2d *Trial* § 795 (1991). Such intent is to be gathered from objective manifestations—the conduct of the parties, language used, or acts done by them, or other pertinent circumstances surrounding the transaction. *Cowan v. Mervin Mewes, Inc.*, 546 N.W.2d 104 (S.D. 1996). See, *James Hardie*

*Gypsum, Inc. v. Inquipco*, 112 Nev. 1397, 929 P.2d 903 (1996); *Fairchild v. Fairchild*, 176 Neb. 95, 125 N.W.2d 191 (1963). Testimony regarding subjective, secret intentions or understandings is not probative evidence. *Walker v. U.S. General, Inc.*, 916 P.2d 903 (Utah 1996); *Mullen v. Christiansen*, 642 P.2d 1345 (Alaska 1982); *Fairchild v. Fairchild, supra.* Compare *Cowan v. Mervin Mewes, Inc.*, 546 N.W.2d at 108 (stating " 'if a party voluntarily indulges in conduct reasonably indicating assent he may be bound even though his conduct does not truly express the state of his mind' ").

Thus, evidence of objective manifestations that could reasonably infer that either Kaiser or Millard Lumber did not intend to enter into a contract of hire would present a genuine issue of material fact. We note that the Iowa Supreme Court, which requires the same showing of an express or implied contract of hire to determine if a loaned employee has become an employee of the special employer, follows a similar analysis. See, *Parson v. Procter & Gamble Mfg. Co.*, 514 N.W.2d 891 (Iowa 1994) (outlining whether any facts indicated loaned employee or special employer intended not to enter into contract of hire, in order to determine whether summary judgment for special employer should be reversed); *Bride v. Heckart*, 556 N.W.2d 449 (Iowa 1996) (citing *Parson* for proposition that determining whether employment relationship exists can be accomplished by looking at intention of parties).

The relevant facts stated in *Daniels* to prove an implied contract of hire focused solely upon the *employee's* intent. Those facts are that the loaned employee (1) had the right to refuse an assignment by the labor broker, (2) voluntarily went to work for the special employer, and (3) performed the tasks assigned to him by the special employer. However, facts were present which reasonably inferred Pamida, the special employer, intended to consider Daniels, the loaned employee, as its employee. Specifically, evidence that Pamida personnel were Daniels' exclusive supervisors and controlled all details of Daniels' work on its premises indicated Pamida intended to enter an implied contract of hire with Daniels. See, *Swanson v. White Consol. Industries, Inc.*, 30 F.3d 971 (8th Cir. 1994); *Parson v. Procter & Gamble Mfg. Co.*, 514 N.W.2d at 895-96 n.2 (Iowa 1994)

(stating that evidence that special employer has "right to control the details of the work" and is " 'the responsible authority in charge of the work' " infers special employer's consent to enter employment relationship with loaned employee).

In order to meet the first element of the *Daniels* test, Millard Lumber had the initial burden to produce evidence supporting an intent of both Kaiser *and* itself to enter a contract of hire. See, *Stiver v. Allsup, Inc., ante* p. 687, 587 N.W.2d 77 (1998); *Battle Creek State Bank v. Preusker*, 253 Neb. 502, 571 N.W.2d 294 (1997). Millard Lumber met that burden. Here, the facts show that while Noll paid Kaiser's wages, provided all payroll services, and directed Kaiser to report to the customer of its choice, Kaiser had the right to refuse or terminate any assignment given. Kaiser understood this right. The evidence undisputedly shows he exercised that right when he requested to be removed from the Able Professional Movers assignment. The evidence undisputedly indicates Kaiser voluntarily went to work at Millard Lumber and performed the tasks Millard Lumber assigned to him each day. Millard Lumber presented evidence regarding its intent to enter an implied contract of hire by showing that its personnel were Kaiser's sole supervisors and solely controlled every detail of his work on its premises. Thus, Millard Lumber met its burden of producing evidence on the *Daniels* test's contract-of-hire element, and the burden shifts to Kaiser to present evidence that shows a genuine issue of material fact. See *Kramer v. Kramer*, 252 Neb. 526, 567 N.W.2d 100 (1997). Thus, we now consider Kaiser's arguments on the implied contract-of-hire element of the *Daniels* test.

Kaiser argues that Millard Lumber treated loaned Noll employees materially differently than its own employees, raising a genuine issue of fact as to Millard Lumber's intent to enter an implied contract of hire with Kaiser. Specifically, Kaiser argues that evidence showing that Millard Lumber did not provide his hardhat and that temporary employees could not attend monthly safety meetings that were mandatory for regular Millard Lumber employees reasonably infers that Millard Lumber did not intend to enter a contract of hire with Kaiser.

Some courts have determined that in particular circumstances, a difference in treatment indicates a special employer

does not consider a loaned employee its own employee and thus manifests an intent not to enter a contract of hire. See, *Parson v. Procter & Gamble Mfg. Co.*, 514 N.W.2d 891 (Iowa 1994) (stating that when loaned employees are required to use separate break rooms, are prohibited from using cafeteria and locker room, and are prohibited from joining company labor association, these facts infer special employer did not intend to enter contract of hire with loaned employee); *Kowalski v. Shell Oil Co.*, 23 Cal. 3d 168, 588 P.2d 811, 151 Cal. Rptr. 671 (1979) (stating that jury verdict finding employment relationship was not created between special employer and loaned employee could be upheld in part by evidence that loaned employee's primary employer provided him with almost all necessary tools and equipment, including hardhat); *Barajas v. USA Petroleum Corp.*, 184 Cal. App. 3d 974, 984, 229 Cal. Rptr. 513, 518 (1986) (stating that jury verdict finding two loaned employees did not become employees of special employer could be upheld in part on evidence of "the differences in the treatment of workers"). We recognize the possibility that certain differences in treatment between a special employer's regular employees and a loaned employee might reasonably infer in certain circumstances that the special employer intended to not enter into a contract of hire with the loaned employee. However, without attempting to define or set out what particular differences in treatment would raise a reasonable inference, we conclude that Kaiser does not present sufficient evidence to show he was actually treated differently than Millard Lumber's regular employees.

Kaiser presented uncontroverted evidence that Noll provided his hardhat and that the cost was deducted from his wages. Kaiser argues that the fact that he had to pay for his own hardhat from Noll infers Millard Lumber intended not to enter into a contract of hire. King, Noll's placement coordinator, testified that she believed Millard Lumber supplied hardhats to its regular employees. However, she stated, "I don't know if they had them payroll deducted." The record contains no documents or testimony from Millard Lumber personnel on whether Millard Lumber in fact paid for the hardhats provided to its regular employees. With the record silent on the issue, no conclusion

can be made that Millard Lumber treated Kaiser any differently, because Millard Lumber may have required its regular employees to purchase hardhats. The burden rested upon Kaiser to present sufficient evidence to raise a reasonable inference, and Kaiser has failed to do that.

Likewise, Kaiser argues that the evidence indicates that Noll employees who worked at Millard Lumber were not included in monthly safety meetings that Millard Lumber regular employees, doing the same work, attended. Kaiser asserts that difference in treatment indicates Millard Lumber did not intend to enter a contract of hire. Each foreman in a particular area held a monthly safety meeting for the group of employees he or she supervised. Attendance was mandatory. Kaiser presented evidence showing that safety meetings were held for the area in which he worked, the main yard. Kaiser did not attend any monthly safety meeting. We note, however, and Kaiser's counsel conceded at oral argument, that the record is silent as to whether such a safety meeting was held on any of the 4 days Kaiser worked at Millard Lumber. Thus, Kaiser presented insufficient evidence to show that he was treated differently in regard to the safety meetings. Kaiser nonetheless argues that the record proves that Noll employees generally were excluded from such meetings. However, we find the record does not support that argument.

Kaiser next argues that a statement in the application Kaiser signed with Noll raises a genuine issue of material fact regarding whether an implied contract of hire was created. The pertinent sentence in the application stated: "If asked by a client of Noll Temporary Services to complete an employment application or other related materials, I agree to immediately contact Noll Temporary Services." That statement indicates only Noll's desire for Kaiser to remain its employee exclusively. Noll's intent is irrelevant to the determination of whether Kaiser and Millard Lumber established an implied contract of hire, and thus no reasonable inference can be drawn from this evidence in Kaiser's favor on this issue.

Kaiser next argues that the fact that Noll set up the pay schedule and was the immediate provider of all benefits to Kaiser raises a genuine issue of material fact. This fact was pre-

sent and considered in *Daniels*, but did not preclude this court from finding an implied contract of hire as a matter of law. Other courts have also determined that evidence that the special employer is not the immediate provider of wages and benefits does not preclude a finding of an implied contract of hire as a matter of law. *Pettaway v. Mobile Paint Mfg. Co., Inc.*, 467 So. 2d 228 (Ala. 1985); *Wright v. Habco, Inc.*, 419 S.W.2d 34 (Mo. 1967). As in *Daniels*, we reject this argument.

## CONTROL

Kaiser's second assignment of error, that the district court erred in concluding that no genuine issue of material fact existed regarding whether Millard Lumber exercised control over Kaiser once Noll assigned Kaiser to work for Millard Lumber, apparently contests the district court's finding that Millard Lumber had the right to control the details of Kaiser's work.

Millard Lumber presented evidence which showed that Millard Lumber exclusively supervised Kaiser once Kaiser was on Millard Lumber's premises. In his deposition, Kaiser states that he reported to a specific location each morning and a Millard Lumber foreman told him where or to whom he was to report each day. Kaiser testified that once he so reported, he was then told by a Millard Lumber employee exactly what work needed to be done. The record reflects Millard Lumber controlled the times when Kaiser could take breaks. Kaiser took breaks at the same time as the Millard Lumber employees with whom he worked. Noll did not supervise him at the jobsite, as contrasted with the case in *Parson v. Procter & Gamble Mfg. Co.*, 514 N.W.2d 891 (Iowa 1994), where the labor broker did have supervisors at the jobsite. Rather, consistent with *Daniels*, evidence that the special employer was the sole provider of supervision at the jobsite is sufficient to find that the special employer had the right to control the details of the loaned laborer's work. Kaiser presented no evidence contradicting Millard Lumber's evidence on this issue, and thus this argument fails.

## AGREEMENT AMONG PARTIES

Finally, Kaiser assigns as error a finding that there was no agreement between Kaiser, Noll, and Millard Lumber as to the

type of work Kaiser would be performing at Millard Lumber. The district court made no such finding. Such a finding is not necessary as part of the *Daniels* three-prong analysis; thus, we fail to see how this assignment of error is relevant to the summary judgment order before this court. Therefore, we decline to consider this assignment of error.

We affirm the district court's grant of summary judgment.

AFFIRMED.