GERING - FORT LARAMIE IRRIGATION DISTRICT, APPELLANT, V.
JOHN T. BAKER, DOING BUSINESS AS BAKER & ASSOCIATES, AND
MARLE G. SMITH, APPELLEES.

606 N.W.2d 826

Filed February 8, 2000.    No. A-98-1247.

John H. Skavdahl, of Skavdahl & Wickersham, for appellant.

Thomas J. Guilfoyle, of Erickson & Sederstrom, P.C., for appellees.

HANNON and INBODY, Judges, and BUCKLEY, District Judge, Retired.

BUCKLEY, District Judge, Retired.

## INTRODUCTION

On August 19, 1997, Gering - Fort Laramie Irrigation District (district) filed a petition against John T. Baker, doing business as Baker & Associates (Baker), and Marle G. Smith, alleging professional negligence. Baker and Smith filed a motion for summary judgment on October 9, 1998, alleging that the district failed to comply with the applicable statute of limitations, Neb. Rev. Stat. § 25-222 (Reissue 1995). The district then filed a second amended petition on October 21. The district court permitted Baker and the district to submit additional affidavits on November 4. The district court sustained Baker's motion for summary judgment on November 5. The district appeals. We reverse.

## BACKGROUND

In March 1992, the district entered into a contract with Baker to design and oversee the construction of the relocation of irrigation structures along Highway 92 west of Scottsbluff, Nebraska.

Pursuant to that agreement, Baker assigned Smith to be the resident project representative. Smith was a civil engineer, reg-

istered with the State of Nebraska since 1975. Smith was responsible for the design and supervision of the district's structure relocation project and worked for Baker from 1991 to 1996. Paul Reed Construction & Supply, Inc., was hired as the contractor responsible for the actual construction of the project.

Under the agreement between Baker and the district, Baker was expected to supply, in addition to the resident project representative, assistants to aid in overseeing the project. Smith and other employees were required to supervise the work of the contractor and provide information to Baker regarding the contractor's compliance with the project specifications and deadlines.

According to the uncontradicted evidence submitted by Baker, 100 percent of the actual construction was completed on August 25, 1993. Baker certified the construction project complete on April 5, 1994. During the spring of 1993, the district discovered a leak in a concrete pipe near station 378, but this leak was not in the PVC joints constructed by the contractor. Shortly after finding this leak, another was discovered in the same general area but near the "new bar pit." Ricky L. Preston, general manager of the district, was unsure what caused this leak, but stated it was fixed by pouring a concrete collar around the area.

The district first discovered a leak in the bend joints in the PVC pipe in the spring of 1994 near station 407. When the district excavated, Preston observed that at the transition point where the PVC pipe changes directions, the two PVC pipes were field cut and wrapped in duct tape. The duct tape was then covered with a concrete collar and wire reinforcement, instead of being joined with a prefabricated PVC coupler. The district did not contact Baker or the contractor regarding the leak, but, instead, fixed it itself. In order to fix the problem, the district replaced the concrete collar with a prefabricated PVC coupler. Preston stated that at that time, he believed that the particular joint was not properly constructed but did not give it much thought, and that he thought there might have been a flaw or something.

Preston testified in his deposition that sometime in June, approximately 2 weeks after the spring 1994 leak was repaired, the district discovered a second leak at approximately station

412. The leak was not causing any damage, and the district decided not to shut down the line at that time. The district excavated the leak near station 412 in the fall of 1994. However, the testimony surrounding the discovery of this leak was unclear. It is difficult to ascertain the nature of the leak, and Preston appeared extremely confused regarding the dates involved.

During the fall of 1996, the district found another leak in a PVC joint. The joint was excavated on November 6, 1996, and found to also be constructed with a concrete collar. The district verbally notified the contractor of the problem. The contractor fixed the joint and backfilled the area. Neither the district nor Baker inspected the repair.

Preston contacted Baker in November 1996 and spoke with an engineer, Barry Swanson. Preston explained that he had discovered a leak in the PVC pipe and had discovered that the bend had been constructed with a concrete collar. Swanson told Preston that the construction was improper. Swanson recalls that they discussed the possibility that there might have been other such improper joints and that they should put the contractor on formal notice. Swanson agreed to draft a letter to the contractor regarding the PVC joint excavated on November 6 and the fact that the joint was repaired without being inspected.

Swanson stated that he delivered the letter to Preston and discussed the contents with him. According to Swanson, Preston wanted the letter to be examined by the district's attorney before being mailed to the contractor. Swanson checked with Preston on at least one occasion to see if the letter had been approved and forwarded to the contractor and was told that it had not been forwarded. Swanson said he never received directions to send the letter to the contractor, and therefore, it was never mailed. Although Preston stated he did not specifically recall advising Swanson that the district's attorney had reviewed the letter and that it needed to be mailed to the contractor, he stated that he had a signed copy of the letter in his files. The copy he had faxed to the attorney had been unsigned. According to Leo Temple, corporate secretary of the contractor, the letter was never received by the contractor.

A third PVC joint was excavated on June 4, 1997, after the district discovered a clogged pipeline in the area. This joint was

also constructed with duct tape and a concrete collar rather than prefabricated PVC couplers. The district advised the contractor of the problem via a letter dated June 9, 1997. The letter essentially notified the contractor that the construction of the PVC joints did not meet contract requirements and that the district expected the contractor to rectify the situation. It also stated that according to the engineer, the concrete collars were not authorized by him. The contractor responded that all of the PVC joints or bends had been constructed with concrete collars instead of prefabricated PVC couplers. The contractor further stated that the use of the concrete collars was approved by Smith. Based on pay estimates, the district suspected that approximately 40 joints were constructed in this manner.

All of the joints or bends in question were below ground. The file maintained by Baker for the project contained a memorandum from Smith to Preston purporting to enclose a new "marked up" set of plans for the Department of Roads, among other documents. These would have been the "as-built" drawings. The district alleges that it never received the as-built drawings from Baker. However, Smith testified that a copy of the as-built plans was submitted to the Department of Roads' Bridgeport construction office.

## ASSIGNMENTS OF ERROR

The district alleges that the district court erred in the following respects: (1) finding that no genuine issue as to a material fact existed, (2) granting Baker's motion for summary judgment on the basis that the case was filed outside of the statute of limitations for professional negligence, (3) applying the professional negligence statute of limitations under § 25-222 rather than Neb. Rev. Stat. § 25-205(1) (Reissue 1995), (4) failing to apply the doctrine of fraudulent concealment, and (5) failing to recognize a continuous relationship between the district and Baker, thereby tolling the statute of limitations from April 1994 until November 1996.

## STANDARD OF REVIEW

In appellate review of a summary judgment, the court views the evidence in a light most favorable to the party against whom

the judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence. *Reinke Mfg. Co. v. Hayes*, 256 Neb. 442, 590 N.W.2d 380 (1999); *Woodard v. City of Lincoln*, 256 Neb. 61, 588 N.W.2d 831 (1999).

Summary judgment is proper only when the pleadings, depositions, admissions, stipulations, and affidavits in the record disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *Reinke Mfg. Co., supra*; *Woodard, supra.*

## DISCUSSION

A party moving for summary judgment has the burden of showing that no genuine issue of material fact exists and must produce sufficient evidence to demonstrate that the moving party is entitled to judgment as a matter of law. *Kaiser v. Millard Lumber*, 255 Neb. 943, 587 N.W.2d 875 (1999). See *Boyle v. Welsh*, 256 Neb. 118, 589 N.W.2d 118 (1999). In order to make a prima facie case for summary judgment, the moving party must show that the movant is entitled to a judgment in its favor if the evidence was uncontroverted at trial. See, *Boyle, supra*; *Kaiser, supra*. After a party moving for summary judgment has shown facts warranting judgment as a matter of law, the opposing party has the burden to present evidence showing an issue of material fact which prevents judgment as a matter of law. See, *Boyle, supra*; *Kaiser, supra.*

*Applicable Statute of Limitations.*

The determination of which statute of limitations applies is a question of law, and an appellate court must decide the issue independently of the conclusion reached by the trial court. *Reinke Mfg. Co., supra*; *Jorgensen v. State Nat. Bank & Trust*, 255 Neb. 241, 583 N.W.2d 331 (1998).

The district argues that Baker's supervisory role could have been completed by assistants and did not require the expertise of an engineer. Therefore, according to the district, the services were not "professional" within the meaning of § 25-222, and the applicable statute of limitations was § 25-205(1), which governs written contracts.

Section 25-222 states in part:

> Any action to recover damages based on alleged professional negligence or upon alleged breach of warranty in rendering or failure to render professional services shall be commenced within two years next after the alleged act or omission in rendering or failure to render professional services providing the basis for such action.

Section 25-222 is a special statute of limitations for professional negligence. *Reinke Mfg. Co., supra.* Section 25-205 is a general statute of limitations for written contract claims. *Reinke Mfg. Co., supra.*

■ Generally absent a more specific statute, actions on written contracts may be brought within 5 years pursuant to § 25-205. *Reinke Mfg. Co., supra.* However, a special statute of limitations controls and takes precedence over a general statute of limitations because the special statute is a specific expression of legislative will concerning a particular subject. *Reinke Mfg. Co. v. Hayes*, 256 Neb. 442, 590 N.W.2d 380 (1999).

■ If all of a plaintiff's claims are based on a single professional relationship, they may not be separated into various parts to allow different periods of limitation to be applied. *Id.* If a plaintiff's claims are for professional malpractice, whether pled in tort or contract, the statute of limitations for professional negligence contained in § 25-222 applies. *Reinke Mfg. Co., supra.*

The limitations period contained in § 25-222 is applicable to an engineer rendering professional services. *Reinke Mfg. Co., supra.* See *Board of Regents v. Wilscam Mullins Birge*, 230 Neb. 675, 433 N.W.2d 478 (1988).

A professional act or service is one arising out of a vocation, calling, occupation, or employment involving specialized knowledge, labor, or skill, and the labor or skill involved is predominantly mental or intellectual rather than physical or manual. *Board of Regents, supra.* See *Reinke Mfg. Co., supra.*

In *Williams v. Kingery Constr. Co.*, 225 Neb. 235, 404 N.W.2d 32 (1987), the plaintiff sued an architectural firm and general contractor for injuries sustained when he fell 30 feet due to the absence of a wall which should have been constructed within the building. The plaintiff argued that § 25-222 did not apply to his case because the architect's failure to detect the

absence of a wall did not fall within the purview of a professional act because anyone could have detected the absence of the wall. The court stated that the architect

> had a professional responsibility to supervise the construction and see to it that all walls called for by the plans and specifications were in fact constructed. It was not the failure to find the wall missing which constitutes the act of negligence but, rather, the failure to properly supervise and see that the required wall was constructed which gives rise to the cause of action. That is clearly a professional act contemplated by § 25-222[.]

*Williams*, 225 Neb. at 239, 404 N.W.2d at 34.

Clearly, the agents and employees inspecting and supervising the project were intended to work on the behalf of and under the supervision of Baker and Smith. The additional help was required to assist Smith in fulfilling his obligation to oversee the construction of the project and ensure that it was accomplished within the specifications of the design. This clearly requires the skill and training of an engineer and was the basis of the professional relationship between the district and Baker. Just as the case in *Williams, supra*, the cause of action was based on the engineer's failure to supervise the project and ensure that the construction was completed according to the specifications. As such, clearly, this was a professional act within the purview of § 25-222, and therefore § 25-222 was properly applied to this case.

*Was Petition Filed Within Statute of Limitations.*

The point at which a statute of limitations begins to run must be determined from the facts of each case, and the decision of the district court on the issue of the statute of limitations normally will not be set aside by an appellate court unless clearly wrong. *Reinke Mfg. Co. v. Hayes*, 256 Neb. 442, 590 N.W.2d 380 (1999); *Gordon v. Connell*, 249 Neb. 769, 545 N.W.2d 722 (1996).

If the facts in a case are undisputed, the issue as to when the professional negligence statute of limitations began to run is a question of law. *Reinke Mfg. Co., supra.*

Under the terms of § 25-222, if an action is not to be considered time barred, the plaintiff must either file within 2 years of

an alleged act or omission or show that its action falls within the exceptions of this section as to its discovery of the defendant's alleged negligence. *Lindsay Mfg. Co. v. Universal Surety Co.*, 246 Neb. 495, 519 N.W.2d 530 (1994).

If a petition, on its face, does not disclose that an action is barred by a statute of limitations, a defendant must plead the statute of limitations as an affirmative defense and has the burden to prove that affirmative defense. *Fulk v. McLellan*, 243 Neb. 143, 498 N.W.2d 90 (1993); *Broekemeier Ford v. Clatanoff*, 240 Neb. 265, 481 N.W.2d 416 (1992).

Where a petition on its face shows that the cause of action stated therein is barred by the statute of limitations, the plaintiff must allege facts to avoid the bar of the statute and, at trial, has the burden to prove those facts. *DeSciose v. Chiles, Heider & Co.*, 239 Neb. 195, 476 N.W.2d 200 (1991).

■ A cause of action accrues for negligence in professional services when the alleged act or omission in rendering or failure to render professional services takes place. *Reinke Mfg. Co., supra*; *Zion Wheel Baptist Church v. Herzog*, 249 Neb. 352, 543 N.W.2d 445 (1996); *Lindsay Mfg. Co., supra.*

■ In a cause of action for professional negligence, legal injury is the wrongful act or omission which causes the loss; it is not damage, which is the loss resulting from the misconduct. *Reinke Mfg. Co., supra.* A period of limitations begins to run upon the violation of a legal right, that is, when the aggrieved party has the right to institute and maintain suit. *Id.*

In *Lindsay Mfg. Co., supra*, the plaintiff sued the engineer, alleging that the engineer had negligently designed and inspected wells that led to the contamination of an aquifer. The engineer had been hired to design and oversee the project. The district court granted summary judgment in favor of the engineer on the basis that the statute of limitations barred the plaintiff's action. The evidence showed that the wells had been completed by December 21, 1982. The engineer alleged that all of his work with monitoring the wells was complete by January 1, 1983. The engineer certified that the entire construction project was complete on July 15, 1985. On appeal, the court held that the statute of limitations began to run on December 21, 1982, the date that the wells were completed. *Id.*

In the present case, the district court stated that the statute of limitations ran from April 5, 1994, to April 5, 1996. According to the uncontradicted evidence submitted by Baker, 100 percent of the actual construction was completed on August 25, 1993. Baker certified the construction project complete on April 5, 1994. Based on this evidence, the acts or omissions which are the basis of the cause of action were completed by August 25, 1993. Therefore, the 2-year statute of limitations began to run on August 25, 1993, and the district had to file its petition before August 25, 1995, unless the discovery exception of § 25-222 applies.

*Discovery Exception.*

If a petition alleges a cause of action ostensibly barred by the statute of limitations, such petition, in order to state a cause of action, must show some excuse tolling the operation and bar of the statute. *Zion Wheel Baptist Church, supra.*

Under § 25-222, the discovery exception states that "if the cause of action is not discovered and could not be reasonably discovered within such two-year period, then the action may be commenced within one year from the date of such discovery or from the date of discovery of facts which would reasonably lead to such discovery."

■ The discovery exception to the statute of limitations is inapplicable if facts are discovered that constitute the basis of a cause of action within 2 years from the alleged act of negligence. *Reinke Mfg. Co. v. Hayes*, 256 Neb. 442, 590 N.W.2d 380 (1999); *Lindsay Mfg. Co. v. Universal Surety Co.*, 246 Neb. 495, 519 N.W.2d 530 (1994); *Economy Housing Co. v. Rosenberg*, 239 Neb. 267, 475 N.W.2d 899 (1991).

■ In the context of statutes of limitations, discovery occurs when the party knows of facts sufficient to put a person of ordinary intelligence and prudence on inquiry which, if pursued, would lead to the discovery of facts constituting the basis of the cause of action. *Gordon v. Connell*, 249 Neb. 769, 545 N.W.2d 722 (1996); *Zion Wheel Baptist Church, supra.*

It is undisputed that the district discovered a leak at a PVC joint in the spring of 1994 and knew that the joint was not properly constructed. As stated previously, the alleged act of negli-

gence occurred for the purpose of the statute of limitations on August 25, 1993. The question is whether finding that one joint was improperly constructed was sufficient to constitute the basis of a cause of action or sufficient to place a person of ordinary prudence on inquiry which if pursued would lead to the facts constituting the basis of the cause of action.

The district court found that the discovery of the leak in the spring of 1994 put the district on inquiry notice. The court further stated that the district could have examined the "as-built" plans in the Department of Roads' Bridgeport office or asked the contractor regarding the construction of the remaining joints after it discovered the improperly constructed joint in the spring of 1994.

The district argues in part that a question of fact exists as to whether the discovery of the leak in the spring of 1994 was sufficient to give it notice of the improper construction of the remaining 39 joints.

It is not necessary that a plaintiff have knowledge of the exact nature or source of the problem, but only that a problem existed. *Reinke Mfg. Co., supra*; *Lindsay Mfg. Co., supra*. One need not know the full extent of one's damages before the limitations period begins to run, as a statute of limitations can be triggered at some time before the full extent of damages is sustained. *Reinke Mfg. Co., supra*; *Gordon, supra*.

Preston acknowledged that he believed that the joint excavated in the spring of 1994 was improperly constructed at the time it was discovered. However, he also stated that he thought perhaps there was simply a flaw at that point and that he did not give it much thought at the time. This leak was discovered shortly after other leaks which did not occur at bend joints in the PVC pipe. Furthermore, in the letter dated November 25, 1996, that Swanson prepared at the district's request, Swanson states, "In our conversations with the resident engineer who provided construction observation, it was stated that he did not allow concrete collars on p.v.c. pipe. This would indicate that this type of construction possibly only occurred occasionally." It is implicit in this statement that even though at this point another leak at a PVC joint had been discovered, even Smith had no reason to believe that all of the joints had been constructed in the same fashion.

Baker relied heavily on *Reinke Mfg. Co. v. Hayes*, 256 Neb. 442, 590 N.W.2d 380 (1999), in its oral argument. *Reinke Mfg. Co.* is distinguishable from the situation in the present case. In *Reinke Mfg. Co.*, the plaintiff had contracted with an engineering firm for the design of a control system for center-pivot irrigation systems. The plaintiff then manufactured and sold approximately 35 irrigation systems equipped with the control system developed by the engineer during the spring of 1992. The plaintiff then began receiving numerous complaints from a number of customers regarding the system. Attempts were made to correct the problems. Then on November 7, the plaintiff compiled a list of the defects and deficiencies in the system. The plaintiff made a demand for damages resulting from the defects in design from the engineer in November 1993, but did not file a petition until November 30, 1994. By the summer of 1992, the plaintiff was aware of substantial problems with the system and had documented those problems by November of that same year.

However, in the present case, the district was not aware of the scope of the improper construction, but, instead, was alerted to one joint, improperly constructed, when it leaked in the spring of 1994. A second joint was discovered in the fall of 1996 and a third in the summer of 1997. The widespread complaints and problems which existed in *Reinke Mfg. Co.* were simply not present in this case. Furthermore, in *Reinke Mfg. Co.*, there was clear evidence that the plaintiff was aware of the defects in design when he documented them in writing. No similar evidence was present in this case.

We are not prepared to state that finding one joint out of 40 under the facts of this case, with no reason to suspect that the remaining were constructed in a similar fashion, is sufficient to place a person on inquiry as a matter of law. A question of fact exists as to whether this discovery would lead a reasonably prudent person to inquire regarding the construction of the remaining 39 joints. Therefore, it was inappropriate to grant Baker's motion for summary judgment on the issue of the discovery exception of § 25-222.

*Doctrine of Fraudulent Concealment.*

The district further argues that the doctrine of fraudulent concealment applies and tolls the statute of limitations. According

to the district, Baker failed to adequately inspect the PVC joints prior to them being backfilled, therefore breaching its duty to the district. The fact that the joints were underground and concealed a material fact which would have led to discovery was a direct result of Baker's breach of duty. According to the district, Baker also failed to send the November 1996 letter to the contractor regarding the improper construction of the PVC joints. The district argues that the logical inference from that failure is that Baker was attempting to conceal its own malpractice.

Equitable estoppel arises from active or affirmative efforts to conceal malpractice. *Schendt v. Dewey*, 252 Neb. 979, 568 N.W.2d 210 (1997). The doctrine of fraudulent concealment estops a defendant from asserting a statute of limitations defense when the defendant has, either by deception or by a violation of a duty, concealed from the plaintiff material facts which prevent the plaintiff from discovering malpractice. *Schendt v. Dewey, supra.* The burden of proof rests on the party who pleads an estoppel to establish the facts upon which the estoppel is based. *Kelly Klosure v. Johnson Grant & Co.*, 229 Neb. 369, 427 N.W.2d 44 (1988).

The fraudulent concealment of a cause of action from the one to whom it belongs, by the one against whom it lies, constitutes an implied exception to the statute of limitations, postponing the commencement of the running of the statute until discovery or reasonable opportunity of discovery of the fact by the owner of the cause of action. *Muller v. Thaut*, 230 Neb. 244, 430 N.W.2d 884 (1988).

The district court held that because the facts underlying the cause of action could have been discovered within the 2-year statute of limitations, the doctrine of fraudulent concealment did not apply. The district court did not address the elements of fraudulent concealment specifically. We have held that a question of fact exists as to whether the district was placed on inquiry after finding the first leak in the spring of 1994. Therefore, discovery does not preclude the district from relying upon the doctrine of fraudulent concealment. As it is unnecessary to address the individual elements of the doctrine of fraudulent concealment in order to dispose of this appeal, we will not do so. See *Kelly v. Kelly*, 246 Neb. 55, 516 N.W.2d 612 (1994)

(appellate court is not obligated to engage in analysis which is not needed to adjudicate case and controversy before it).

*Continuous Relationship.*

The district argues that the continuous relationship between the district and Baker tolled the statute of limitations from April 1994, when the project was certified as complete, to November 1996, when Baker continued to act as an intermediary between the district and the contractor regarding the project.

The district did not allege in its amended petition that the statute of limitations was tolled under the continuous relationship doctrine, and the trial court did not address the issue in its order. An appellate court will not consider an issue on appeal that was not passed upon by the trial court. *Vinci v. Nebraska Dept. of Corr. Servs.*, 253 Neb. 423, 571 N.W.2d 53 (1997).

## CONCLUSION

For the foregoing reasons, we find that the district court erred in sustaining Baker's motion for summary judgment, as there is a question of material fact as to whether the district would have discovered facts that are the basis of the cause of action within the 2-year statute of limitations. We therefore reverse the ruling of the district court.

REVERSED.