David D. STARK, M. D., Plaintiff,

v.

**SOTERIA IMAGING SERVICES, INC., and Nebraska Health Imaging, Defendants.**

No. 8:02CV560.

United States District Court, D. Nebraska.

Aug. 12, 2003.

Leo A. Knowles, James G. Powers, McGrath, North Law Firm, Omaha, NE, Adam C. Smedstad, Best, Friedrich Law Firm, Chicago, IL, for Nebraska Health Imaging.

William M. Lamson, Jr., Michele E. Young, Lamson, Dugan Law Firm, Omaha, NE, for David D. Stark.

## MEMORANDUM AND ORDER

BATAILLON, District Judge.

### I. Introduction

Before me is the defendants' Rule 12(b)(6) motion, Filing No. 14, to dismiss the complaint, Filing No. 1, for failure to state a claim upon which relief may be granted. The parties submitted briefs. Filing Nos. 15, 16, and 17. I have carefully reviewed the record, the parties' briefs, and the applicable law, and I conclude that the defendants' motion to dismiss the complaint should be denied.

### II. Factual Background

At the time of the events described in the complaint, the plaintiff, Dr. David Stark, was the chairperson of the Department of Radiology at the University of Nebraska Medical Center (UNMC). As a faculty member and physician at UNMC, Stark was also affiliated with University Medical Associates (UMA). Filing No. 1, ¶ 6. In April 1999, Stark also began to engage in professional activities beyond his duties at UNMC. *Id.,* ¶ 7. One such activity involved business dealings with defendant Soteria Imaging Services, Inc. (Soteria). For example, Stark contracted with Soteria in March 2000 to operate an imaging facility in Massachusetts.[1] *Id.,* ¶ 9.

On December 2, 1998, Stark and Soteria entered into a non-competition agreement (Non–Compete Agreement) in which Sote-

---

1. I note with interest that Soteria and Stark apparently negotiated this contract contempo-

raneously with or shortly after the events giving rise to the present cause of action.

ria agreed not to open an imaging center in or around Omaha, Nebraska, during the term of the agreement, set to expire on December 21, 2000. In exchange, Stark agreed to supply Soteria with the knowledge and expertise needed to operate, market, staff, and run an imaging center in Omaha. *Id.,* ¶ 10.

Before the Non–Compete Agreement expired, Stark began acting as an intermediary between UMA and UNMC on one side and Soteria on the other with the goal of establishing a medical imaging facility in Omaha to be known as Nebraska Health Imaging (NHI).[2] Stark alleges that he offered to grant Soteria a limited waiver of the Non–Compete Agreement so that Soteria could negotiate with UMA. *Id.,* ¶ 11. Stark also alleges that UMA and Soteria were then to execute a License and Service Agreement (License Agreement), which would provide that Stark would be the managing director of NHI. In exchange for being named managing director, Stark would consult with and assist Soteria and UMA in getting NHI up and running. *Id.*

Stark and his attorney received preliminary drafts of the License Agreement and actively participated in its drafting. Stark claims that at all times while he was engaged in setting up NHI, the various drafts of the License Agreement all contained a clause obligating UMA to appoint him as NHI's managing director. *Id.,* ¶ 12. In February 2000, however, Stark claims that UMA asked Soteria to remove Stark's name from the draft License Agreement, allegedly assuring Soteria that UMA would issue a letter appointing Stark as NHI's managing director. *Id.,* ¶ 13.

Stark claims that Soteria and UMA thereafter signed the License Agreement without the clause appointing him managing director. UMA never issued a letter appointing Stark the NHI's managing director, even though Stark functioned in that capacity without pay until he left his employment with UNMC several months after the License Agreement was signed.[3] *Id.,* ¶ 14. Stark states that Soteria refused to execute the limited waiver of the Non–Compete Agreement, but agreed to compensate him for his efforts in getting NHI set up, for his services as managing director, and for releasing Soteria from the Non–Compete Agreement. *Id.,* ¶ 16. According to the complaint, neither Soteria nor NHI has paid Stark any compensation to date. *Id.,* ¶ 17.

Stark alleges that Soteria estimates Stark's interest in NHI to be worth as much as $867,036. *Id.*

### III. Legal Standard

In reviewing a complaint on a Rule 12(b)(6) motion, the court must consider all of the facts alleged in the complaint as true, and construe the pleadings in a light most favorable to the plaintiff. *See, e.g., Brotherhood of Maint. of Way Employees v. BNSF R.R.,* 270 F.3d 637, 638 (8th Cir.2001). A dismissal is not lightly granted. "A complaint shall not be dismissed for its failure to state a claim upon which relief can be granted unless it appears beyond a reasonable doubt that plaintiff can prove no set of facts in support of a claim entitling him to relief." *Young v. City of St. Charles,* 244 F.3d 623, 627 (8th Cir.2001). When accepting the facts of the complaint as true, a court will not, however, "blindly accept the legal conclusions drawn by the pleader from the facts.'" *Westcott v. City of Omaha,* 901 F.2d 1486, 1488 (8th Cir.1990) (citing *Morgan v. Church's Fried Chicken,* 829 F.2d 10, 12

---

2. The complaint describes NHI as a Nebraska corporation that is wholly-owned subsidiary of Soteria. Filing No. 1, ¶ 2.

3. The complaint alleges that NHI saw its first patient around March 2, 2000. Filing No. 1, ¶ 15.

(6th Cir.1987)). A dismissal under Rule 12(b)(6) is therefore granted "only in the unusual case in which a plaintiff includes allegations that show on the face of the complaint that there is some insuperable bar to relief," *Schmedding v. Tnemec Co.*, 187 F.3d 862, 864 (8th Cir.1999), such as a missing allegation about an element necessary to obtain relief or an affirmative defense or other bar, *Doe v. Hartz*, 134 F.3d 1339, 1341 (8th Cir.1998). The court does not determine whether the plaintiff will ultimately prevail, but rather whether the plaintiff is entitled to present evidence in support of the claim. *Doe v. Norwest Bank*, 909 F.Supp. 668, 670 (D.Minn.1995).

## IV. Discussion

### A. *Count I—Promissory Estoppel* (against Soteria and NHI)

 Under Nebraska law, "a promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise." *Hawkins Constr. Co. v. Reiman Corp.*, 245 Neb. 131, 511 N.W.2d 113, 117 (1994) (quoting *Rosnick v. Dinsmore*, 235 Neb. 738, 457 N.W.2d 793, 799 (1992)). The party asserting estoppel must have relied in good faith on the conduct or statements of the party to be estopped. *Miller v. City of Omaha*, 260 Neb. 507, 618 N.W.2d 628, 635 (2000).

The complaint alleges that "through words and deeds," Soteria and NHI promised to appoint Stark the managing director, Filing No. 19, and that Stark reasonably relied on that promise, causing him to expend great time and effort in setting up NHI, *id.*, ¶¶ 20–21. Soteria and NHI contend, however, that they did and said nothing to induce Stark's reliance. Any promise that Stark would be named the managing director came from UMA—which is not a party to this suit—rather

than from Soteria or NHI. *See id.*, ¶¶ 12–14.

This factual dispute about who, if anyone, promised Stark he would be the managing director of NHI should not be resolved in a Rule 12(b)(6) motion to dismiss. Accepting the allegations in the complaint as true, I conclude that Stark should be allowed to prove if Soteria's "words and deeds" constituted a promise that Soteria would name him NHI's managing director.

Soteria also argues, however, that even assuming Soteria made a promise to Stark, Stark could not have reasonably relied on it because he knew from his involvement in negotiations between UMA and Soteria that only UMA had the power to name NHI's managing director. Whatever the merits of this argument, the complaint alone does not establish how much or how little Stark knew about the organization's authority to make him the managing director. Stark is entitled to present evidence that he did reasonably rely to his detriment on statements made by Soteria.

If Stark presents sufficient evidence at trial that Soteria promised him the position and that he reasonably relied on that promise, the jury could find for Stark on his claim for promissory estoppel. Accordingly, the motion to dismiss Count I is denied.

### B. *Count II—Unjust Enrichment* (against Soteria and NHI)

 The doctrine of unjust enrichment is implicated only when the parties do not have an express contract. *See Washa v. Miller*, 249 Neb. 941, 546 N.W.2d 813, 819 (1996) (noting that doctrine cannot "rescue a party from the consequences of a bad bargain."). To recover on a claim for unjust enrichment, a plaintiff must prove that the defendant "received and retained [benefits] under such circumstances that it would be inequitable and unconscionable to permit the party receiving them to avoid

payment therefor." *Hoffman v. Reinke Mfg. Co.*, 227 Neb. 66, 416 N.W.2d 216, 219 (1987). Whether a defendant has been unjustly enriched is a question of fact. *Sorenson v. Dager*, 8 Neb.App. 729, 601 N.W.2d 564 (1999).

The defendants' contention that the complaint fails to allege what benefits Stark conferred on them is somewhat disingenuous. The complaint clearly alleges that the defendants received the benefit of Stark's connections, knowledge, expertise, and effort in establishing NHI and getting it operating. Although the defendants characterize themselves as mere third party beneficiaries of an agreement between Stark and UMA with regard to NHI, the complaint plainly alleges that Stark provided the defendants with professional and consulting services.

■ Soteria and NHI further contend that the unjust enrichment claim must fall because the complaint fails to allege that they, as third party beneficiaries, engaged in fraud or misrepresentation.

> The mere fact that a third person benefits from a contract between two other persons does not make such third person liable in quasi contract, unjust enrichment, or restitution. Moreover, where a third person benefits from a contract entered into between two other persons, in the absence of some misleading act by the third person, the mere failure of performance by one of the contracting parties does not give rise to a right of restitution against the third person.

*Haggard Drilling, Inc. v. Greene*, 195 Neb. 136, 236 N.W.2d 841, 846 (1975) (*quoting* 66 Am.Jur.2d, *Restitution and Implied Contracts* § 16 at 960). *See also McIntosh v. Borchers*, 201 Neb. 35, 266 N.W.2d 200, 203 (1978) (finding no cause of action for unjust enrichment where the plaintiffs failed to allege or prove that third party defendants benefitted from improvements placed on the plaintiffs' property or that they "committed or participated in any fraud, misrepresentation, or other wrongful conduct"); *White v. State Farm Mut. Auto. Ins. Co.*, 1995 WL 521004 at *5 (Neb.Ct.App.1995) (requiring plaintiff using unjust enrichment theory to allege and prove fraud, misrepresentation, or other wrongful conduct).[4]

The defendants' argument is valid, however, only if Soteria and NHI were in fact no more than third party beneficiaries of a contract between UMA and Stark, rather than parties to a contract or quasi-contract between themselves and Stark. Given Stark's allegations about his dealings with Soteria and NHI, such a legal conclusion would be premature. Moreover, even if Soteria and NHI are merely third party beneficiaries, the complaint can be construed to allege that Soteria's misrepresentations led Stark to believe that he would be named managing director in exchange for his professional efforts in setting up NHI.

I therefore find that Stark is entitled to present evidence on his claim of unjust enrichment. The defendants' motion to dismiss Count II is denied.

---

4. This fraud element of an unjust enrichment cause of action may be in flux in Nebraska. The Court of Appeals recently stated in a rescission action based on the doctrine of unjust enrichment that

> [t]he most significant element of the doctrine of unjust enrichment is whether the enrichment of the defendant is unjust. Although unjust enrichment may arise from

fraud or several other predicates, *the element of fraud or tortious conduct on the part of a defendant is not necessary in an action for unjust enrichment.*

*Kisicki v. Mid–America Fin. Inv. Corp.*, 2002 WL 31654490 at *6 (Neb.Ct.App.2002) (*quoting with approval* 66 Am.Jur.2d *Restitution and Implied Contracts* § 12 at 609 (2000)) (emphasis added).

## C. Count III—Implied Contract (against Soteria alone)

■■■■ An implied contract is an "obligation[ ] which arises from mutual agreement and intent to promise, when the agreement and promise have simply not been expressed in words. An implied contract arises where the intention of the parties is not expressed but where the circumstances are such as to show a mutual intent to contract". *Turner v. Fehrs Neb. Tractor & Equip. Co.*, 259 Neb. 313, 609 N.W.2d 652, 659 (2000) *(citing Kaiser v. Millard Lumber,* 255 Neb. 943, 587 N.W.2d 875, 882 (1999)). An implied contract cannot exist without evidence of mutual intent. *Id.* (*citing Bloomfield v. Nebraska St. Bank,* 237 Neb. 89, 465 N.W.2d 144 (1991)). Whether the parties intended to contract is a question of fact. *Kaiser v. Millard Lumber,* 587 N.W.2d at 881 (*citing* 75A Am.Jur.2d *Trial* § 795 (1991)). Evidence of intent comes from "objective manifestations-the conduct of the parties, language used, or acts done by them, or other pertinent circumstances surrounding the transaction." *Id.* (citations omitted).

Soteria contends that Stark's implied contract claim must fail because the complaint fails to allege that Soteria intended to contract with Stark. Soteria is mistaken. Stark alleges that not only did he and Soteria intend to enter a contract with regard to Stark's establishment and management of NHI, but also that Stark's other business dealing with Soteria and its efforts to calculate Stark's compensation constitute circumstances that show a mutual intent to contract.

Taking all of the allegations in the complaint as true and construing them in Stark's favor, I therefore find that he is entitled to present the jury with evidence of the implied contract between himself and Soteria. Soteria's motion to dismiss Count III is denied.

## D. Count IV—Breach of Contract (against Soteria alone)

The complaint alleges that the Non–Compete Agreement between Stark and Soteria provided that Soteria would refrain from opening imaging centers in or around Omaha until December 2000 in exchange for Stark's agreement to share with Soteria certain confidential and proprietary information about radiology centers. Filing No. 1, ¶ 33. Stark alleges that he offered to waive his rights under the Non–Compete Agreement in order to assist Soteria in reaching an agreement with UMA about opening NHI. In return for waiving his rights, Stark alleges that Soteria was to have appointed him the managing director of NHI. Soteria never executed the waiver of the Non–Compete Agreement. Consequently, Stark contends, Soleria breached the Non–Compete Agreement when it executed the License Agreement with UMA that failed to name him the managing director of NHI.

■■■■ Soteria argues, however, that the claim for breach of contract must fail because Stark affirmatively alleges in the complaint that he waived his right to enforce the Non–Compete Agreement by permitting Soteria to work with UMA. *Id.,* ¶ 11. Waiver of an express contract, whether direct or inferential, may be "proved by express declarations manifesting the intent not to claim the advantage." *Wheat Belt Pub. Power Dist. v. Batterman,* 234 Neb. 589, 452 N.W.2d 49, 53 (1990). To establish a waiver, the evidence must show "clear, unequivocal, and decisive action of a party showing such a purpose, or acts amounting to estoppel on his part." *Id.* (*citing Jelsma v. Scottsdale Ins. Co.,* 231 Neb. 657, 437 N.W.2d 778, 786 (1989)).

■■■■ Contrary to Soteria's assertion, the complaint nowhere states that Stark

actually waived the Non–Compete Agreement. Instead, the complaint states that he 1) *"was to grant* a limited waiver" of the Agreement, Filing No. 1, ¶ 11; 2) *"was to waive* his rights" under the Agreement, *id.,* ¶ 35; and 3) he *"did not waive* his rights," *id.,* ¶ 36 (emphasis added). Further, the complaint states that Stark did not waive his rights under the Non–Compete agreement "because UMA and Soteria did not fulfill the promise to appoint Dr. Stark as Managing Director at NHI." *Id.* The complaint thus contains no allegation of an express waiver.

But Soteria also argues that by assisting Soteria in the development and operation of NHI, Stark demonstrated that he "waived any right he had to claim that [Soteria's] involvement with [NHI] violated the Non–Compete Agreement." Filing No. 15, Defendants' Brief, at 9. Such "waiver" is not apparent on the face of the complaint, however, since Stark alleges his conduct was induced by Soteria's promise to appoint him NHI's managing director. It is difficult to see why Stark would waive valuable protection under the Non–Compete Agreement if he did not expect a valuable promise or performance in return for his waiver.

The issue of waiver presents a factual dispute that, like the factual dispute in Count I, should not be resolved in a Rule 12(b)(6) motion to dismiss. Accepting the allegations in the complaint as true, I conclude that Stark should be allowed to prove to the jury whether Soteria breached the Non–Compete Agreement by executing the License Agreement with UMA. Accordingly,

IT IS ORDERED that the defendants' motion to dismiss, Filing No. 14, is denied in its entirety.