PHILLIP D. TURNER, APPELLANT, V. FEHRS NEBRASKA
TRACTOR & EQUIPMENT CO., FORMERLY KNOWN
AS FEHRS TRACTOR & EQUIPMENT,
A NEBRASKA CORPORATION, APPELLEE.

609 N.W. 2d 652

Filed April 27, 2000.   No. S-98-635.

William L. Reinbrecht for appellant.

John C. Brownrigg and Kevin R. McManaman, of Erickson & Sederstrom, P.C., for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

GERRARD, J.

Phillip D. Turner appeals from an order of the Douglas County District Court, which granted summary judgment to

Fehrs Nebraska Tractor & Equipment Co. (Fehrs). The following two questions are presented in this appeal: (1) Does an employer who requires employees to furnish their own tools have a duty to protect or insure these tools against loss, in the absence of a special relationship such as bailment? (2) Does an implied contract to protect or insure the tools on the part of the employer arise because the employer requires its employees to furnish their tools? We answer both questions in the negative and, therefore, affirm the judgment of the district court.

### FACTUAL AND PROCEDURAL BACKGROUND

Fehrs hired Turner to work as a shop mechanic in the summer of 1993. Turner brought his own mechanic's tools to use at Fehrs. Fehrs did not insure Turner's tools, or any of its mechanics' tools, at that time.

Turner's toolbox was heavy and large; Turner estimated that it weighed probably 5,000 pounds. However, the toolbox was on casters and could be moved without mechanical assistance. Turner stored his tools at Fehrs' shop, but he was free to take his tools home. Fehrs' employee Robert Witzel acknowledged, however, that it was not practical to take such tools home.

In September 1994, an unknown perpetrator or perpetrators burglarized Fehrs' facility at 18th and Cuming Streets, Omaha, Nebraska, and stole, among other things, Turner's toolbox. Turner claimed that the stolen tools were worth $52,680.77. He filed suit against Fehrs on October 2, 1997, asserting that Fehrs was negligent and had breached an implied contract. Turner alleged that Fehrs was negligent in failing to provide adequate security measures to protect his property as follows: (1) failure to secure the premises with a burglar alarm or motion detectors, (2) failure to secure the premises with a guard or security patrol, (3) failure to bar the windows of the premises, (4) failure to secure the premises with an adequate physical barrier to secure Turner's tools, (5) failure to provide insurance coverage for Turner's tools, and (6) failure to inform Turner prior to the burglary that there was no insurance coverage on his tools. Notably, Turner did not plead a bailment relationship. In his cause of action concerning the breach of an implied contract, Turner alleged that in order to comply with the employment agreement,

Turner kept his tools on the premises of Fehrs with its knowledge and acquiescence and that Fehrs' conduct in failing to secure or insure Turner's tools breached the implied contract of employment between the parties as to the use and safety of Turner's tools.

In its answer, Fehrs denied Turner's allegations of negligence and breach of an implied contract. Fehrs alleged that any tools which Turner lost from the burglary were a result of his own negligence in the following particulars: (1) leaving his tools on Fehrs' premises when he knew that Fehrs had not taken the security measures that Turner now asserts in his petition as indications of Fehrs' negligence; (2) failing to take any measures, beyond locking the toolbox, to protect against theft of the tools and toolbox, such as securing them to the premises with chains, padlocks, or other security devices; and (3) failing to complain to Fehrs concerning any perceived inadequacy in the security measures Fehrs employed with respect to the premises. Fehrs also alleged in its answer that Turner voluntarily assumed the risk of any loss associated with the theft of the tools because, with full knowledge of the security measures employed by it at its business premises, he nevertheless voluntarily chose to leave the tools on the premises during nonworking hours.

Fehrs moved for summary judgment, asserting that "there is no genuine issue as to any material fact affecting its alleged liability, and it is entitled to judgment as a matter of law." At the hearing on the motion, Fehrs offered as evidence the depositions of Turner; Fehrs' president, B.J. Vlcek; and Fehrs' employees Patrick Bivens and Witzel. In general, Turner testified that he was told that he had to furnish his own tools but that Witzel did not tell him to leave his tools there. Turner acknowledged that he was not told that Fehrs would insure his tools, that he was the only employee with a key to his toolbox, and that he knew about Fehrs' security measures.

Vlcek testified that Fehrs' security measures included a 10- to 12-foot barbed wire fence and a gate secured with a chain and lock. Vlcek admitted that Fehrs controlled the security measures to prevent unwanted access to its premises and to protect the shop and its contents. Vlcek also admitted that Fehrs controlled who had access to keys and who could enter the premises.

Bivens testified that it is part of the trade for mechanics to own their own tools and that Turner was free to take his tools home if he so desired. Bivens could not remember if he or Witzel cleared a spot for Turner's toolbox prior to the commencement of Turner's employment. Bivens also provided some details about the September 1994 burglary. He stated that the chain on the gate was a relatively heavy chain and that the body of the padlock was gone. Bivens opined that Turner could have chained his toolbox to a vise or a post.

Witzel testified regarding the hiring of Turner and stated that there was no written employment agreement. Witzel stated that Fehrs never hired any mechanic that did not own his or her own tools to bring to the job and that it was a condition of employment. He did not know why mechanics are required to bring their personal tools to the job, but stated that it is "[j]ust the way it is." Witzel could not remember if he specifically discussed with Turner the need to insure his own tools, but stated that it was Fehrs' policy to make everyone aware of the need to insure them. He did not remember clearing a spot for Turner's tools. Witzel testified that in the September 1994 burglary, the burglar or burglars cut the lock on the chain link fence, took out the glass windows at the front of the shop, and unlocked the door and entered. Witzel also stated that the fence surrounding the property, locked doors, and outside security lights were the only security measures. In Witzel's opinion, the only thing Turner could have done to secure his toolbox was to chain it to something. Both Vlcek and Bivens remembered one prior break-in, but could not specify when it occurred.

Turner's own affidavit was offered and received into evidence, in which he stated:

> At the time of my arrival a spot in the shop was cleared for my toolbox. It is my impression that Mr. Bivens had cleared the location at the direction of Mr. Witzel.
>
> . . . I was then informed that much of my work would be close to this location and it was agreed that it made sense to keep my toolbox at the cleared location in the shop.
>
> . . . It was by mutual agreement where the toolbox stayed. Once in place my toolbox was not moved until it was stolen.

The district court sustained Fehrs' motion for summary judgment and entered judgment accordingly. In sustaining the motion, the district court stated: "I don't find the duty . . . anywhere; and you have to have a duty before you have the negligence. And I clearly don't find there was a meeting of the minds to have a contract, and I'm going to rule in favor of the defendant." Turner appeals.

## ASSIGNMENTS OF ERROR

Turner alleges that (1) the district court erred in granting Fehrs' motion for summary judgment on issues and grounds not raised before the court, (2) the district court erred in sustaining Fehrs' motion for summary judgment because there are genuine issues of material fact to resolve at trial, and (3) the district court's judgment was contrary to law and to the evidence.

## STANDARD OF REVIEW

Summary judgment is proper only when the pleadings, depositions, admissions, stipulations, and affidavits in the record disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *Parnell v. Madonna Rehab. Hosp.*, 258 Neb. 125, 602 N.W.2d 461 (1999); *Ferguson v. Union Pacific RR. Co.*, 258 Neb. 78, 601 N.W.2d 907 (1999).

In reviewing a summary judgment, an appellate court views the evidence in a light most favorable to the party against whom the judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence. *Ferguson v. Union Pacific RR. Co., supra*; *Knoll v. Board of Regents*, 258 Neb. 1, 601 N.W.2d 757 (1999).

The question whether a legal duty exists for actionable negligence is a question of law dependent on the facts in a particular situation. *Danler v. Rosen Auto Leasing, ante* p. 130, 609 N.W.2d 27 (2000). On a question of law, an appellate court is obligated to reach a conclusion independent of the determination reached by the court below. *Spulak v. Tower Ins. Co.*, 257 Neb. 928, 601 N.W.2d 720 (1999); *State v. Hittle*, 257 Neb. 344, 598 N.W.2d 20 (1999).

## ANALYSIS

### GRANT OF SUMMARY JUDGMENT ON
### GROUNDS NOT RAISED BEFORE COURT

Turner first claims that the district court sustained Fehrs' motion for summary judgment on issues not pleaded and that basing a judgment thereon is prejudicially erroneous. Because the record shows otherwise, we summarily dispose of this assignment of error. The district court's journal entry reveals that the court reviewed exhibits 1 through 5 (depositions and Turner's affidavit). After reviewing the evidence, the district court entered judgment in favor of Fehrs, and in the oral grant of summary judgment, the district court clearly addressed both the negligence and contract causes of action. This assignment of error is without merit.

### NEGLIGENCE

Turner's first cause of action sounds in negligence. The threshold inquiry in any negligence action is whether the defendant owed the plaintiff a duty. *Danler v. Rosen Auto Leasing, supra.* If there is no duty owed, there can be no negligence. *Bargmann v. Soll Oil Co.*, 253 Neb. 1018, 574 N.W.2d 478 (1998). Assuming there is a duty, the duty in a negligence case is to conform to the legal standard of reasonable conduct in light of the apparent risk. See *Doe v. Gunny's Ltd. Partnership*, 256 Neb. 653, 593 N.W.2d 284 (1999).

The district court's order evinces that it sustained Fehrs' motion for summary judgment in part because it found no duty. Thus, whether Fehrs owed a duty to protect or insure Turner's tools given that it was industry custom or a condition of employment that mechanics provide their own tools is the dispositive question regarding the negligence cause of action. The issue of duty is a question of law, and we are obligated to reach a conclusion independent of the determination reached by the court below. See, *Spulak v. Tower Ins. Co., supra*; *State v. Hittle, supra.*

In determining whether a duty exists, an appellate court employs a risk-utility test, considering (1) the magnitude of the risk, (2) the relationship of the parties, (3) the nature of the attendant risk, (4) the opportunity and ability to exercise care, (5) the foreseeability of the harm, and (6) the policy interest in

the proposed solution. *Danler v. Rosen Auto Leasing, supra.*
Foreseeability alone is not dispositive. *Id.*

Several factors weigh against the establishment of a duty in this case. Turner had the opportunity and the ability to exercise care; he could have insured his tools himself or secured them by chaining his toolbox to a stationary object in the facility each night. In a similar case involving the theft of tools voluntarily left at the employer's premises, one court reasoned:

> The employee knows the condition of the plant, *e.g.*, absence of receptacles or chains, and does have a say as to whether he will expose himself to the risk of theft caused by the condition of the plant. He can both continue his employment and yet choose whether or not to take his tools with him, and thus avoid their theft. The risk is an avoidable one. If to serve his own convenience he chooses to leave the tools at the plant, he must be deemed to do so in light of the generally recognized principle that there can be no recovery for reasonably avoidable harm, whether to person or property.

*Collins v. Boeing Co.*, 4 Wash. App. 705, 716, 483 P.2d 1282, 1288 (1971). Similar to *Collins v. Boeing Co.*, the theft of Turner's tools was a reasonably avoidable harm.

■Additionally, Turner seeks to impose a duty to protect and insure because of the employment relationship between Turner and Fehrs. However, the employment relationship alone does not impose a duty on the employer to protect the employee against theft loss caused by third parties.

Public policy seeks to place the burden of the loss on the person in the best position to avoid the loss. Turner was aware of the security measures, or lack thereof, used by Fehrs. He could have taken preventive measures, such as securing the toolbox, as noted previously. There was no evidence of any type of special relationship, such as a bailment, between the parties whereby Fehrs assumed a duty to protect its employees against property crimes committed by third parties. Moreover, there was no evidence that Fehrs' shop was located in a high-crime area; the uncontroverted evidence is that there had been only one prior break-in at Fehrs' shop at some time during the past 22 years. There was no testimony as to how that break-in had occurred,

nor was there any indication as to whether or to what extent that incident involved theft. After applying the risk-utility balancing test, we conclude that the district court did not err in determining that Fehrs did not have a duty to protect its employees against theft loss caused by third parties under the circumstances.

The same rationale applies to the purported duty to either insure or warn about the lack of insurance. A duty to warn cannot be imposed absent a special relationship. *Popple v. Rose*, 254 Neb. 1, 573 N.W.2d 765 (1998). The fact that there was no evidence supporting a special relationship between the employer and employee herein necessarily results in a determination of no duty to warn about the lack of insurance. In sum, Fehrs had no common-law duty to protect or insure Turner's personal property under these circumstances. This assignment of error is without merit.

### IMPLIED CONTRACT

Turner, however, also pled an implied contract cause of action. In addressing this issue, it must be decided if there is a question of fact regarding the existence of an implied contractual duty of Fehrs to secure or insure Turner's tools. Turner claims that the totality of Fehrs' conduct forms an implied agreement that Fehrs would either secure or insure Turner's tools. The specific conduct Turner points to is that (1) Fehrs did not tell him that it did not provide insurance for his tools, (2) Fehrs benefited from the use of Turner's tools and allowed him to keep his tools in the facility, and (3) Fehrs required Turner to provide his own tools as a condition of employment. Turner argues that the consideration for the agreement is the fact that Fehrs made a profit on the work Turner did with his tools.

The term "implied or inferred contract," or "implied in fact contract," refers to that class of obligations which arises from mutual agreement and intent to promise, when the agreement and promise have simply not been expressed in words. An implied contract arises where the intention of the parties is not expressed but where the circumstances are such as to show a mutual intent to contract. *Kaiser v. Millard Lumber*, 255 Neb. 943, 587 N.W.2d 875 (1999). To have an implied contract, there

must be evidence of mutual intent; without such evidence there cannot be an implied contract. *Bloomfield v. Nebraska State Bank*, 237 Neb. 89, 465 N.W.2d 144 (1991). There is no evidence in the instant case to suggest a question of fact regarding Turner's and Fehrs' mutual intent to form a contract to protect or to insure. To the contrary, Fehrs' conduct makes it clear that Fehrs had no such intent. The district court did not err in granting summary judgment on this ground to Fehrs.

## CONCLUSION
Having determined that each of Turner's assigned errors lack merit, we affirm the judgment of the district court.

AFFIRMED.