dictate that appointment of a GAL was "mandatory" and that the county court's failure to make the appointment was plain error.[23] Unless the court is prepared to overrule this precedent, it should be followed. I respectfully dissent from the majority's failure to do so.

Miller-Lerman, J., joins in this dissent.

_____

[23] See *id.*

_____

Martin V. Linscott, individually and on behalf of Shasteen, Linscott & Brock, P.C., a Nebraska professional corporation, appellant, v. Rolf Edward Shasteen and Tony J. Brock, appellees.

___ N.W.2d ___

Filed June 6, 2014.    No. S-13-597.

1. **Judgments: Appeal and Error.** When reviewing questions of law, an appellate court resolves the questions independently of the lower court's conclusions.
2. **Contracts: Parties: Intent.** To create a contract, there must be both an offer and an acceptance; there must also be a meeting of the minds or a binding mutual understanding between the parties to the contract.
3. **Contracts: Parties.** A binding mutual understanding or meeting of the minds sufficient to establish a contract requires no precise formality or express utterance from the parties about the details of the proposed agreement; it may be implied from the parties' conduct and the surrounding circumstances.
4. **Contracts: Parties: Intent.** An implied contract arises where the intention of the parties is not expressed in writing but where the circumstances are such as to show a mutual intent to contract.
5. **Contracts: Proof.** Evidence of facts and circumstances, together with the words of the parties used at the time, from which reasonable persons in conducting the ordinary affairs of business, but with special reference to the particular matter on hand, would be justified in inferring such a contract or promise, is sufficient.
6. **Contracts: Parties: Intent.** The determination of the parties' intent to make a contract is to be gathered from objective manifestations—the conduct of the parties, language used, or acts done by them, or other pertinent circumstances surrounding the transaction.
7. **Contracts: Intent.** If the parties' conduct is sufficient to show an implied contract, it is just as enforceable as an express contract.

8. **Contracts.** Partial performance can remove uncertainty in the terms of a contract and establish that an enforceable contract has been formed.

9. **Contracts: Parties: Intent.** The interpretation given to a contract by the parties themselves while engaged in the performance of it is one of the best indications of true intent and should be given great, if not controlling, influence.

10. **Contracts: Statute of Frauds: Time: Words and Phrases.** For purposes of the statute of frauds, a contract "not to be performed within one year" is one which by its terms cannot be performed within 1 year.

11. **Contracts: Statute of Frauds: Time.** A contract is not within the statute of frauds merely because it may, or probably will, not be performed within 1 year.

12. ____: ____: ____. An oral agreement is valid under the statute of frauds if it is capable of being performed within 1 year from the date of making.

13. **Contracts: Parties: Intent.** To be void, the express terms of a contract must show that performance was to occur outside of 1 year or the facts must show that the parties could not have intended for performance to be completed within 1 year.

14. **Contracts: Time.** Even if a contract is not performed within 1 year, it is not void if it is capable of being performed within 1 year.

15. **Pleadings.** An affirmative defense must be specifically pled to be considered.

16. **Pleadings: Notice.** The key to determining the sufficiency of pleading an affirmative defense is whether it gives the plaintiff fair notice of the defense.

17. **Pleadings: Appeal and Error.** An affirmative defense not raised or litigated in the trial court cannot be urged for the first time on appeal.

18. **Appeal and Error.** Errors that are assigned but not argued will not be addressed by an appellate court.

19. ____. The purpose of an appellant's reply brief is to respond to the arguments the appellee has advanced against the errors assigned in the appellant's initial brief.

20. **Waiver: Appeal and Error.** Errors not assigned in an appellant's initial brief are waived and may not be asserted for the first time in a reply brief.

21. **Appeal and Error.** An appellate court will not consider an issue on appeal that was not presented to or passed upon by the trial court.

22. ____. Errors argued but not assigned will not be considered on appeal.

Appeal from the District Court for Lancaster County: James T. Gleason, Judge. Reversed and remanded for further proceedings.

V. Gene Summerlin and Marnie A. Jensen, of Husch Blackwell, L.L.P., for appellant.

Victor E. Covalt III and Adam R. Little, of Ballew, Covalt & Hazen, P.C., L.L.O., for appellees.

Heavican, C.J., Wright, Connolly, Stephan, McCormack, Miller-Lerman, and Cassel, JJ.

McCORMACK, J.

## NATURE OF CASE

Martin V. Linscott brought suit individually and derivatively on behalf of Shasteen, Linscott & Brock, P.C. (SLB), against Rolf Edward Shasteen and Tony J. Brock for one-third of attorney fees recovered from SLB cases that existed at the time Linscott withdrew as a shareholder. After a bench trial, the district court held that Linscott was not owed any attorney fees because there was not an enforceable contract and the "unfinished business rule" was not applicable. Linscott now appeals.

## BACKGROUND

On July 8, 2002, Linscott, Shasteen, and Brock formed the law firm SLB, a Nebraska professional corporation. In 2004, Linscott drafted a proposed shareholder agreement that specified how attorney fees would be divided if a shareholder left the firm. The proposed agreement contemplated that the departed attorney would receive a one-third share of all fees from existing in-process cases and that the firm would receive two-thirds. The proposed agreement was never executed by Linscott, Shasteen, or Brock.

Shortly after the proposed shareholder agreement was circulated, Shasteen and Brock left a signed letter on Linscott's office chair. The letter requested that Linscott leave SLB. The letter stated, "Keep all your cases and we'll keep ours or we can divide them as per the proposed agreement."

Linscott withdrew from the day-to-day operations of SLB and began practicing law with a new firm. On September 16, 2004, Shasteen and Brock changed the name of SLB to Shasteen, Brock & Scholz, P.C. That same day, Linscott sent an e-mail to Shasteen and Brock discussing "issues" arising from Linscott's leaving. In particular, the e-mail stated, "Cases: Should be handled as proposed in the agreement, me paying you 2/3 of the fees on my SLB cases, you paying me 1/3 of the remaining SLB cases . . . ."

Beginning on September 17, 2004, Linscott began sharing fees with Shasteen and Brock. From that date through January 10, 2005, Linscott sent 42 fee checks to Shasteen and Brock totaling $39,519.49. Likewise, starting on September 20, 2004,

and concluding on December 28, 2004, Shasteen and Brock sent 26 fee checks totaling $44,147.46 to Linscott. The 68 checks exchanged represented fees from a total of 134 cases. The fees were sent without reducing the amounts for expenses or overhead.

On September 17, 2004, Linscott sent an e-mail to Shasteen and Brock indicating that he intended to pay them for their portion of fees collected from three clients. On September 20, 2004, Linscott e-mailed Shasteen and Brock and stated that he had showed his office staff how to divide fees and that he intended to continue splitting fees the "same way" as they had been doing. The e-mail further stated, "I am going to honor our fee arrangement and trust that you will do the same, so I'm not going to require any additional documentation other than maybe the disbursement letter on non [sic] weekly checks (settlements). Let me know if you disagree."

In a response e-mail sent on September 22, 2004, Brock did not object to the fee arrangement. On November 17, Linscott sent a letter to Shasteen and Brock, which stated, "As far as the fees are concern [sic], I think things are working well on our cases where fees are currently being generated." In a response letter dated November 29, 2004, Shasteen disagrees with certain requests made by Linscott but does not discuss or contest the fee arrangement between the parties. On January 24, 2005, Shasteen sent Linscott an SLB case list, which indicated cases that existed at the time of Linscott's departure which were retained by Shasteen and Brock.

According to Brock, this exchange of fees from September 17, 2004, through January 10, 2005, was done without his knowledge. When Brock learned of this arrangement, he ordered it to stop. Shasteen and Brock stopped sending checks on December 28, 2004. Linscott sent his last fee check on January 10, 2005.

Linscott filed his complaint with the Lancaster County District Court. He pleaded five counts: corporate derivative claims for injunctive relief and an accounting and individual claims for an accounting, breach of contract, and breach of fiduciary duty. Shasteen and Brock did not file a counter-complaint for the return of the fees they had already sent to

Linscott. The trial was bifurcated in two parts: liability and damages. After a bench trial on liability, the district court held that Linscott was entitled to an accounting and found that there was an enforceable agreement.

The damages portion of the trial was held on March 2, 2012. In its order dated February 28, 2013, the district court vacated its reception of the summary exhibits 88 through 92.

Upon reconsideration, the district court found that there was an absence of specific material terms—in particular, a definition of "'net fees'" in the unexecuted written agreement—that precluded the possibility of an implied contract. It further concluded that even if there was an oral contract, the contract would be void under the statute of frauds. The district court held that Shasteen and Brock had no obligation to Linscott to share any additional attorney fees. Upon a motion for new trial, the district court further found that the "unfinished business rule" has no application to this case. The district court found that absent an enforceable agreement, all payments made were voluntary. The district court concluded that Shasteen and Brock were under no obligation to continue payments.

## ASSIGNMENTS OF ERROR

Linscott assigns that the district court erred by (1) concluding that the agreement was unenforceable due to the statute of frauds, (2) concluding that the unfinished business rule was not applicable to Linscott's request for an accounting, (3) concluding that Linscott was not entitled to an accounting, (4) failing to award damages to Linscott based on the accounting, (5) reversing its liability judgment following the damages trial, (6) reversing its receipt into evidence of Linscott's exhibits 88 through 92, and (7) failing to award prejudgment interest to Linscott.

## STANDARD OF REVIEW

[1] When reviewing questions of law, an appellate court resolves the questions independently of the lower court's conclusions.[1]

---

[1] *Zawaideh v. Nebraska Dept. of Health & Human Servs.*, 285 Neb. 48, 825 N.W.2d 204 (2013).

## ANALYSIS

The issues presented by this appeal are whether the district court erred as a matter of law in holding (1) that the absence of specific material terms, in particular, that the definition of "net fees" prevents a finding an implied contract was formed, and (2) that the statute of frauds barred the action. We reverse the district court's order and find that it erred as a matter of law on both findings.

It is conceded by Linscott that the proposed shareholder agreement was not executed, but he argues that an implied contract was created by the conduct of the parties. We therefore begin our analysis by setting out the established Nebraska law on implied in fact contracts.

[2,3] To create a contract, there must be both an offer and an acceptance; there must also be a meeting of the minds or a binding mutual understanding between the parties to the contract.[2] A binding mutual understanding or meeting of the minds sufficient to establish a contract requires no precise formality or express utterance from the parties about the details of the proposed agreement; it may be implied from the parties' conduct and the surrounding circumstances.[3]

[4-7] An implied contract arises where the intention of the parties is not expressed in writing but where the circumstances are such as to show a mutual intent to contract.[4] Evidence of facts and circumstances, together with the words of the parties used at the time, from which reasonable persons in conducting the ordinary affairs of business, but with special reference to the particular matter on hand, would be justified in inferring such a contract or promise, is sufficient.[5] The determination of the parties' intent to make a contract is to be gathered from objective manifestations—the conduct of the parties, language used, or acts done by them, or other pertinent circumstances

---

[2] *City of Scottsbluff v. Waste Connections of Neb.*, 282 Neb. 848, 809 N.W.2d 725 (2011).

[3] *Id.*

[4] See, *id.*; *Turner v. Fehrs Neb. Tractor & Equip.*, 259 Neb. 313, 609 N.W.2d 652 (2000).

[5] *Woods v. Woods*, 177 Neb. 542, 129 N.W.2d 519 (1964).

surrounding the transaction.[6] If the parties' conduct is suffi-
cient to show an implied contract, it is just as enforceable as an
express contract.[7]

Here, Linscott alleges that prior to his departure from SLB,
the parties had discussed the proposed shareholder agreement
that allocated fees on an equal basis between each shareholder.
The letter signed by Shasteen and Brock stated, "Keep all
your cases and we'll keep ours or we can divide them as per
the proposed agreement." The testimony indicates that the
"proposed agreement" refers to the shareholder agreement con-
cerning the fee split. In an e-mail sent the next day, Linscott
informed Shasteen and Brock that he chose to divide the fees
as per the agreement.

Linscott alleges that Shasteen and Brock did not object to
Linscott's decision on the fee division until months after the
performance began. With Shasteen and Brock's apparent acqui-
escence, Linscott went forward with the agreement and had
his office staff begin dividing fees. Shasteen and Brock also
went forward with the agreement and began exchanging checks
with Linscott. A total of 68 checks were exchanged over sev-
eral months, which Linscott alleges were in accord with the
proposed agreement. From this evidence, Linscott argues an
implied contract was formed. The district court disagreed for
two reasons.

First, the district court found that the parties did not define
specific material terms of the alleged contract; however, it
provided only one example. It stated that the "most flagrant
absence is any definition in paragraph 4 of [the proposed
shareholder agreement] of what is intended by the parties by
the use of the words, 'net fees.'" It is unclear from the district
court's order how the lack of a definition for the term "net
fees" prevents the formation of a contract between the parties.
But the district court seemed to find this lack of definition
decisive. The court made no factual findings on the surround-
ing circumstances of the transaction. Due to the lack of factual
findings in the order, it appears from our reading that the

[6] *Kaiser v. Millard Lumber*, 255 Neb. 943, 587 N.W.2d 875 (1999).

[7] *City of Scottsbluff v. Waste Connections of Neb.*, *supra* note 2.

district court found the absence of any definition of the term "net fees" to be a legal barrier to the formation of an enforceable contract.

Such a finding is incorrect. The proposed shareholder agreement is only one circumstance surrounding the alleged implied in fact contract that can help determine the intentions of the parties on how the fees were to be split. Other circumstances include the parties' objective manifestations, such as their conduct surrounding the transaction.[8]

[8,9] For instance, it is a relevant circumstance that the parties split fees by exchanging a total of 68 checks. And it is well established that partial performance can remove uncertainty in the terms of a contract and establish that an enforceable contract has been formed.[9] In fact, we have stated that the interpretation given to a contract by the parties themselves while engaged in the performance of it is one of the best indications of true intent and should be given great, if not controlling, influence.[10]

It was, therefore, error for the district court to reason that the lack of a written definition for the term "net fees" bars a finding of an enforceable contract. At its core, an implied contract arises where the intention of the parties is not expressed in writing but where the surrounding circumstances are such to show a mutual intent to contract.[11] Although the proposed shareholder agreement is a circumstance that could help determine the terms of the implied contract, the conduct and partial performance of the parties are also integral to that determination. And that conduct could also help define the terms of the agreement. On remand, the district court should determine whether all of the surrounding facts and circumstances of this transaction created an implied in fact contract and whether

---

[8] *Kaiser v. Millard Lumber, supra* note 6.

[9] Restatement (Second) of Contracts § 34(2) (1981); 42 C.J.S. *Implied Contracts* § 1 (2007).

[10] See, *City of Scottsbluff v. Waste Connections of Neb., supra* note 2; *International Harvester Credit Corp. v. Lech*, 231 Neb. 798, 438 N.W.2d 474 (1989).

[11] *City of Scottsbluff v. Waste Connections of Neb., supra* note 2.

such facts and circumstances can define the terms of the alleged agreement.

Second, the district court found that if there was an implied contract, it was void under the statute of frauds, because the contract could not be performed within 1 year. Again, we disagree.

[10-12] The statute of frauds provides, in relevant part: "In the following cases every agreement shall be void, unless such agreement, or some note or memorandum thereof, be in writing, and subscribed by the party to be charged therewith: (1) Every agreement that, by its terms, is not to be performed within one year from the making thereof . . . ."[12] "A contract 'not to be performed within one year' is one which by its terms cannot be performed within 1 year."[13] A contract is not within the statute of frauds merely because it may, or probably will, not be performed within 1 year.[14] To state the rule in positive terms, an oral agreement is valid under the statute of frauds if it is capable of being performed within 1 year from the date of making.[15] The determination of whether a contract falls within the statute of frauds is a question of law.[16]

[13] Here, the record does not establish that this implied contract could not be performed within 1 year. Each of the open cases subject to the implied contract could have wrapped up within the year either by settlement, dismissal, or final disposition. Nothing by the terms of the oral contracts indicates that such occurrence was impossible. To be void, the express terms of a contract must show that performance was to occur outside of 1 year or the facts must show that the parties could not have intended for performance to be completed within 1 year.[17] Neither situation is applicable here.

---

[12] Neb. Rev. Stat. § 36-202 (Reissue 2008).

[13] *Rath v. Selection Research, Inc.*, 246 Neb. 340, 343, 519 N.W.2d 503, 506 (1994).

[14] *Johnson v. First Trust Co.*, 125 Neb. 26, 248 N.W. 815 (1933).

[15] *Rath v. Selection Research, Inc., supra* note 13.

[16] 37 C.J.S. *Statute of Frauds* § 228 (2008).

[17] See, *id.*; *Powder River Live Stock Co. v. Lamb*, 38 Neb. 339, 56 N.W. 1019 (1893).

[14] In response, Shasteen and Brock argue that the fact the actual performance of this contract has taken over 7 years indicates the impossibility of the contract's being performed within 1 year. However, even if a contract is not performed within 1 year, it is not void if it is capable of being performed within 1 year.[18] Although 7 years indicate the unlikelihood of the contract's being performed within 1 year, it does not establish that the implied contract could not have been performed within 1 year had it been carried out in a different manner.[19]

Additionally, Shasteen and Brock make two arguments that appear under the statute of frauds argument section. First, they argue that the partial performance is insufficient to avoid the statute of frauds. This argument is irrelevant, because we hold that the statute of frauds is not applicable.

[15-17] Second, Shasteen and Brock argue that Nebraska corporate law under Neb. Rev. Stat. § 21-2069 (Reissue 2012) requires such a shareholder agreement to be in writing. This argument is unrelated to the Nebraska statute of frauds found under § 36-202, which was relied upon by the district court in its order. This argument is a new affirmative defense. Matters which seek to avoid a valid contract are affirmative defenses.[20] An affirmative defense must be specifically pled to be considered.[21] The only affirmative defense raised by Shasteen and Brock is that the "alleged 'Shareholders Agreement' cannot be enforced as enforcement thereof is barred by the applicable statute of fraud and is not signed by the parties." The key to determining the sufficiency of pleading an affirmative defense is whether it gives the plaintiff fair notice of the defense.[22] The reference to the "applicable statute of fraud" is in clear reference to § 36-202, as evidenced by our use of the term

---

[18] See *id*.

[19] See 13 Samuel Williston, A Treatise on the Law of Contracts § 39:1 (Richard A. Lord ed., 4th ed. 2013).

[20] *Schuelke v. Wilson*, 255 Neb. 726, 587 N.W.2d 369 (1998).

[21] *Countryside Co-op v. Harry A. Koch Co.*, 280 Neb. 795, 790 N.W.2d 873 (2010).

[22] *Stevenson v. Wright*, 273 Neb. 789, 733 N.W.2d 559 (2007).

in prior cases.[23] Use of the term "applicable statute of fraud" would not give Linscott fair notice of the potential affirmative defense found under § 21-2069. An affirmative defense not raised or litigated in the trial court cannot be urged for the first time on appeal.[24]

Therefore, the district court erred as a matter of law in determining that the oral contract was void under the statute of frauds.

The remaining assignments of error, as well as the remaining arguments made by both parties, will not be addressed in this opinion and should be made before the district court on remand. Specifically, we find that it is unnecessary to address the assignment of error regarding the unfinished business rule at this time. The unfinished business rule states that absent a contrary agreement, any income generated through the winding up of unfinished business of a partnership is allocated to the former partners according to their respective interests in the partnership.[25] Having decided to remand this cause to the district court for a determination of whether there was a contrary implied in fact contract, we need not address whether the unfinished business rule is applicable.

[18-20] Linscott also assigns that the district court erred in denying receipt of four exhibits, but he failed to make such an argument in his opening brief. Errors that are assigned but not argued will not be addressed by an appellate court.[26] Linscott's attempt to make the argument for the first time in the reply brief is too late. The purpose of an appellant's reply brief is to respond to the arguments the appellee has advanced against the errors assigned in the appellant's initial brief.[27] Errors not assigned in an appellant's initial brief are

[23] See, e.g., *Braunger Foods v. Sears*, 286 Neb. 29, 834 N.W.2d 779 (2013); *Rath v. Selection Research, Inc., supra* note 13.

[24] *Jameson v. Liquid Controls Corp.*, 260 Neb. 489, 618 N.W.2d 637 (2000).

[25] *Schrempp and Salerno v. Gross*, 247 Neb. 685, 529 N.W.2d 764 (1995).

[26] *Livingston v. Metropolitan Util. Dist.*, 269 Neb. 301, 692 N.W.2d 475 (2005).

[27] *Genetti v. Caterpillar, Inc.*, 261 Neb. 98, 621 N.W.2d 529 (2001).

thus waived and may not be asserted for the first time in a reply brief.[28]

[21] As for the final assignment of error concerning prejudgment interest, the district court has not made a ruling on prejudgment interest or the amount of damages because it found no liability. It is a longstanding rule that we will not consider an issue on appeal that was not presented to or passed upon by the trial court.[29] Therefore, on remand, Linscott can argue such issues before the district court.

[22] We also want to note that in Linscott's opening brief's statement of facts, Linscott discusses a client's workers' compensation and uninsured motorist claim. In his argument section, Linscott argues that the attorney fees received by Linscott for this underinsured motorist claim are not subject to the SLB fee split agreement. But such argument was not assigned as error. Errors argued but not assigned will not be considered on appeal.[30] This is a damages issue, which can be addressed by the district court on remand if it finds liability.

## CONCLUSION

We conclude that the district court erred as a matter of law in determining that the lack of specific material terms, particularly the definition of "net fees," prevents a finding of an implied in fact contract. We also find that the district court erred, as a matter of law, in its determination that the statute of frauds rendered any implied contract void. For those reasons, we reverse the judgment and remand the cause for further proceedings.

Reversed and remanded for further proceedings.

---

[28] *Id*.

[29] *Carlson v. Allianz Versicherungs-AG*, 287 Neb. 628, 844 N.W.2d 264 (2014).

[30] *Butler County Dairy v. Butler County*, 285 Neb. 408, 827 N.W.2d 267 (2013).